STOWERS, Chief Justice,
with whom Maassen, Justice, joins, dissenting.
I dissent from today's opinion because I believe that the superior court moved too quickly through these proceedings. As a result, Clementine never had the opportunity to meaningfully contest the allegations against her, and the superior court released Jasmine to Jermaine without fully considering allegations that he had abandoned Jasmine. By so doing the court erroneously failed to provide Clementine a continuance, failed to conduct a hearing, and violated Clementine's due process rights.
I. DISCUSSION
A. The Superior Court Erred By Releasing Jasmine From OCS Custody And Dismissing The Case.
Under the unique circumstances of this case, I would find that Clementine was entitled to final probable cause findings regarding OCS's allegations against her before the *48 superior court released custody. to Jermaine and dismissed the case.
The court concludes that the superior court did not make final probable cause findings because Magistrate Judge Adams's and Judge Schally's findings were preliminary probable cause findings [1] and because the superior court dismissed the case,. The court then explains: |
CINA Rule 10(c)(1) states that if the court does not find probable cause, it "shall order the child returned to the home and dismiss the petition," and a related requirement in AS 47.10.142(e) states that in the absence of a probable cause finding, the court must "order the child returned to the custody of the child's parents." That is precisely what the superior court did in this case
by releasing Jasmine to Jermaine. I disagree with that conclusion. First, releasing custody to Jermaine effectively , removed Jasmine from Clementine's care without adequate, final probable cause findings against Clementine. Final probable cause findings would have determined, as a threshold matter, whether Jasmine should have been removed from Clementine's home in the first place.
Second, even if the superior court had made final probable cause findings supporting the dismissal of the case against Clementine, returning Jasmine to Clementine's home-the only home she has ever known- and “returmng” her to the home of a parent who has never acted as her caregiver are drastically different outcomes. I do not believe that AS 47.10.142(e) and CINA Rule 10(c)(1) should be read to bring about an outcome that "returns" Jasmine to a place she has never called home and to a parent who has never served as her caregiver. What actually happened was that the State-that is, both OCS and the court-effected a change in physical custody without giving the formal custodial parent an opportunity to be fully and fairly heard. Therefore, I would hold that Clementine was entitled to final probable cause findings regarding the allegations against her; if those final probable cause findings supported the dismissal of the case against Clementine, the superior court should have ordered Jasmine returned to Clementine's home-the same home from which she was removed.
Alaska Statutes 47.05.060 and 47.10,086 support this interpretation. In AS 47.05.060, the legislature states that "[the purpose of this [CINA] title as it relates to children is to secure for each child the care and guidance, preferably in the child's own home, that will serve the moral, emotional, mental, and physical welfare of the child and the best interests of the community." The legislature's preference to keep the child in "the child's own home" suggests that the term "home" as used in AS 47.10.1426) and CINA Rule 10(c)(1) is meant to refer to the child's original living situation, rather than 'a broader definition that includes an absent, previously unengaged parent. And AS 47.10,086 requires that if a child is found to be a child in need of aid, OCS "shall make timely, reasonable efforts to provide family support services to the child and to the parents or guardian of the child that are designed to prevent out-of-home placement of the child or to enable the safe return of the child to the family home." The existence of this provision suggests that the legislature intended CINA rules and statutes to promote, if possible, the reinstatement of the child's original living situation when OCS becomes involved in a child's custody. In other words, OCS *49 must make reasonable efforts to reunite the child with the original custodial parent. Here, OCS made no efforts to reunite Jasmine with Clementine, as the superior court prematurely dismissed the case before any further proceedings could occur with regards to the emergency petition.
For these reasons, I would hold that Clementine was entitled to final probable cause proceedings regarding the allegations against her, and if those final probable cause findings were to support the dismissal of the case against Clementine, the superior court should return Jasmine to Clementine's care. If the probable cause findings supported removal, then OCS should have been required to proceed in the usual fashion to provide Clementine with a case plan and services aimed at allowing Clementine to remedy her conduct such that she could reunify with her child.
-B. Clementine Was Entitled To An Ev- | identiary Hearing Regarding Her Allegations Against Jermaine.
The court concludes that even under CINA Rules 19.1(b) or CINA rules that Clementine wished to apply to her opposition-Clementine was not entitled to an evi-dentiary hearing regarding her allegations - against Jermaine. Although I would preliminarily hold that the superior court clearly erred in finding that no statement of facts supported Clementine's. allegations under CINA Rule 6(b)(2), I also disagree with this court's conclusion that CINA Rule 19.1(b) does not apply to Clementine's opposition.
First, under CINA Rule 6(b)(2), Clementine's opposition "must be supported by a statement of facts sufficient to show that the child is a child in need of aid and is in a condition which requires the immediate assumption of custody." Clementine met her prima facie burden, asking for an evidentiary hearing only to further substantiate the allegations for which she already offered proof. In her opposition to Jermaine's motion, Clementine argued that Jasmine was a child in need of aid as a result of Jermaine's abandonment, and her attorney's affidavit confirmed that he believed this argument had merit, While Jermaine apparently had no criminal or child protective services history in either Minnesota or Alaska and his interactions with Jasmine were preliminarily deemed "totally appropriate [and] caring," there was enough evidence in the opposition and supporting affidavit to substantiate Clementine's assertions that Jermaine abandoned Jasmine under AS 47.10.011(1).[2] Jermaine had not paid child support in three years, had never sought a civil custody order or other means to enforce custody, and had extremely limited contact with Jasmine for the first six years of her life. Based on these allegations, supported by an affidavit, Jermaine appears to have "shown a conscious disregard of parental responsibilities toward [Jasmine] by failing to provide reasonable support, maintain regular contact, or provide normal supervision," "has made only minimal efforts to support and communicate with [Jasmine]," and/or has "failed for a period of at least six months to maintain regular visita-
*50 tion with [Jasmine]." [3] Therefore, because Clementine had asserted plausible prima fa-cie allegations supported by an affidavit that Jermaine had abandoned Jasmine, the superior court clearly erred in finding that there was no evidence showing that Jermaine's conduct caused Jasmine to be a child in need of aid. The superior court-analyzing Clementine's opposition under CINA Rule 6(b)-should instead have found that Clementine sufficiently substantiated her allegations of abandonment and, at the very least, should have permitted further discovery and an evi-dentiary hearing on that issue.
Second, as this court notes, Clementine argues that the superior court should have treated her opposition to Jermaine's motion as a petition for a review hearing under CINA Rule 19.1(b) or (d) rather than CINA Rule 6(b) CINA Rule 19.1(b) states that
[alt any time in a proceeding, a party who is opposed to [OCS] transferring a child from one placement to another may move the court for a review hearing at which the requesting party must prove by clear and convincing evidence that the transfer would be contrary to the best interest of the child.
I believe that CINA Rule 19.1(b) applies to Clementine's opposition and would entitle her to a hearing regarding her argument against transferring placement of Jasmine from Clementine to Jermaine.
This court dismisses Clementine's argument that Rule 19.1(b) applies because "OCS did not transfer Jasmine from one placement to another; OCS released Jasmine from custody when the court dismissed the case" and because the term " 'placement' is used to refer to the home of a child who remains in OCS custody." The court therefore concludes that CINA Rule 19.1(b) did not apply to Clementine's opposition and that Clementine was not entitled to a hearing on her allegations against Jermaine.
But I do not find the court's support for these arguments convincing. The court's argument that OCS did not transfer Jasmine from one placement to another because OCS released Jasmine from custody and dismissed the case is contrary to any reasonable common sense understanding of what actually happened and raises form over substance. OCS cooperated with Jermaine to effectuate a change in Jasmine's living situation, moving her from Clementine's care and physical custody to Jermaine's physical custody. Therefore, OCS in effect transferred Jasmine from one custodial placement with Clementine to another with Jermaine, and the superior court should therefore have analyzed Clementine's opposition under CINA Rule 19.1(b).
With regard to the term "placement," and contrary to this court's explanation, the phrase is not always "used to refer to the home of a child who remains in OCS eusto-dy." For instance, other CINA rules refer to adoptive or other permanent living arrangements as "placements," and, in these instances, a child does not remain in OCS custody after such placements.[4] In A.B. v. State, Department of Health & Social Services, we noted that AS 47.10.088(a) "provides that a court may terminate parental rights 'for the purposes of freeing a child for adoption or other permanent placement,'" and we remanded the case for the superior court to explain whether termination of the mother's rights was appropriate given the State's efforts to unite the child with her biological father.[5] In so doing we noted that "[pllace ment with a non-terminated parent could be an 'other permanent placement' under AS 47.10.088(a), and, under AS 47.10.088(h), terminating the non-custodial parent's rights would not affect the rights of the custodial parent. But the termination must be made 'for purposes of freeing a child for such permanent placement." [6] We reiterated this point in a later unpublished memorandum *51 opinion.[7] In other cases we have used "placement" to refer to returning the child to a biological parent.[8] There is no compelling reason to support the court's favored reading of the term "placement"; to conclude that OCS did not effect a change in placement of the child ignores any common sense understanding of the term. Again, I would construe the rule to permit Clementine to have a hearing at which she might discover or adduce further evidence that Jasmine's physical placement with Jermaine is contrary to Jasmine's best interests.
C. The Superior Court Violated Clementine's Due Process Rights.
I would also hold that the superior court violated Clementine's fundamental liberty interest in parenting Jasmine without due process by dismissing the proceedings against Clementine without allowing her to meaningfully address OCS's emergency petition and by releasing Jasmine to Jermaine without allowing Clementine to participate in an evi-dentiary hearing to determine whether Jasmine is a child in need of aid with respect to both her conduct and Jermaine's conduct. Clementine had a reasonable expectation that she would be able to address OCS's concerns about her conduct and to present evidence to the court regarding Jermaine's conduct. Instead, the superior court never completed OCS's proceedings against her, and it ignored her plausible prima facie allegations, supported by Camozzi's affidavit, that Jermaine abandoned Jasmine.
OCS's decision to dismiss the case affected Clementine's rights to raise Jasmine free from state interference and to meaningfully be heard regarding both OCS's allegations against her and her allegations against Jermaine. Contrary to this court's conclusion, the superior court's premature dismissal of the case did not "grant[ ] Clementine all the relief to which she would be entitled even if [the superior court] had made specific and final findings on the allegations in the emer-geney petition." The superior court's dismissal and release of custody to Jermaine radically altered the status quo by changing the family's physical custody arrangements; Jasmine was sent to live with Jermaine in Minnesota rather than continuing to live with Clementine in Alaska.
II. CONCLUSION
For the reasons detailed above, I dissent from this court's affirmance of the dismissal of the CINA case.

. AS 47.10.011(1) states that the court may find a child to be a child in need of aid if "a parent or guardian has abandoned the child as described , in AS 47.10.013, and the other parent is absent or has committed conduct or created conditions that cause the child to be a child in need of aid under this chapter." The abandonment statute, AS 47.10.013, explains that
[flor purposes of this chapter, the court may find abandonment of a child if a parent or guardian has shown a conscious disregard of parental responsibilities toward the child by failing to provide reasonable support, maintain regular contact, or provide normal supervision, considering the child's age and need for care by an adult. Abandonment of a child also includes instances when the parent or guardian, without justifiable cause, (1) left the child with another person without provision for the child's support and without meaningful communication with the child for a period of three months; (2) has made only minimal efforts to support and communicate with the child; (3) failed for' a period of at least six months to maintain regular visitation with the child; (4) failed to participate in a suitable plan or program designed to reunite the parent or guardian with the child; (5) left the child without affording means of identifying the child and the child's parent or guardian; (6) was absent from the home for a period of time that created a substantial risk of serious harm to a child left in the home; (7) failed to respond to notice of child protective proceedings; or (8) was unwilling to provide care, support or supervision for the child.

. AS 47.10.013(a).

. See, e.g., CINA Rule 17.2(e) (requiring courts to make written findings after a permanency hearing on "whether the child should be placed for adoption or legal guardianship" or "whether there is compelling reason that the most appropriate placement for the child is in another planned, permanent living arrangement" (emphasis added)).

. 7 P.3d 946, 954-55 (Alaska 2000).

. Id. at 954 n. 24.

. Victor B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs., 2011 WL 6004329, at *7 (Alaska 2011) ("'We have stated that '[pllacement with a non-terminated parent could be an "other permanent placement" under AS 47.10.088(a).'" (alteration in original) (quoting A.B., 7 P.3d at 954 n. 24)).

. See J.S. v. State, 50 P.3d 388, 395 (Alaska 2002) (''The superior court's finding beyond a reasonable doubt that placement with [the father] would result in serious emotional damage to the boys was therefore not clearly erroneous."); Denise L. v. State, Dep't of Health & Social Servs., Office of Children's Servs., 2014 WL 1168868, at *2, *4 (Alaska 2014) (explaining that "[in April 2013, at the request of OCS, the trial court released Isis from OCS custody and placed her with her father" and that "[the trial court found that continued placement in [the mother's] home would be contrary to the welfare of the children 'based on the history of [the] whole case'" (first and third alterations in original)).